```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONALD ERSLER, MARK FLORES, FRED
and JANET GINSBERG, and ATULYA MAHAJAN,
on behalf of themselves and all others similarly situated,

                    Plaintiffs,
                                                                        MEMORANDUM &
            -against-                                                   OPINION
                                                                        CV-07-2304 (SMG)
TOSHIBA AMERICA, INC. and TOSHIBA
AMERICA CONSUMER PRODUCTS, L.L.C.,

                    Defendants.
------------------------------------------------------------X
GOLD, S., U.S.M.J.:
```

## INTRODUCTION

On September 18, 2009, I entered an order granting the parties' motion for preliminary approval of a class action settlement. I have today entered an order finally approving the settlement agreement, certifying the class, and approving the attorney's fees sought by plaintiffs' counsel subject to the terms of the parties' settlement agreement. This memorandum, together with the statements I made during the fairness hearing held on February 18, 2009, sets forth my reasons for entering that order.

The facts and circumstances of this case closely resemble those that led the court to certify a class and approve the terms of a settlement and an award of attorney's fees in *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ("*Sony*"). Moreover, there is little controversial about the final approval and certification sought by the parties in this action. Accordingly, rather than recite the well-established case law governing class certification and final approval of class action settlements, I will track the court's decision in the *Sony* case and incorporate the case law relied upon in that decision by reference.

**BACKGROUND**

The amended complaint in this action, Docket Entry 18, alleges that certain high-end televisions manufactured and marketed by defendants had defective bulbs that ceased to function early on in their expected useful life. The complaint names five plaintiffs who purchased defendants' televisions – to the extent indicated in the complaint, at prices of more than $2,000 – and were required to replace the original bulbs within three to thirty months of purchase. Some of the plaintiffs purchased replacement bulbs at costs of $200 to $233, only to find that the replacement bulbs failed early on in their useful lives as well. Plaintiffs assert claims under the New Jersey Consumer Fraud Act or, in the alternative, under the "substantially similar consumer protection laws of the 50 states and the District of Columbia." Am. Compl. ¶ 19.

The settlement agreement reached by the parties permits class members who experienced bulb failures within certain specified time frames to obtain reimbursement for the replacement bulbs they purchased. The agreement also extends the warranty on replacement bulbs from six months to twelve months.

My order preliminarily approving the parties' settlement provided for direct hard copy or electronic mail notice to class members whose street or e-mail addresses were known, distribution of the class notice for posting at retailers that sold the covered television models, and publication on a dedicated website and in two national newspapers and a magazine. Order Granting Motion for Preliminary Approval at 8-9; Docket Entry 29-2 at 45-46. This notice was, of course, provided.

The parties estimate that the class is comprised of approximately 265,000 persons. Mem. of Law in Supp. of Joint Mot. for Final Approval at 9. A claims administrator provided notice by

direct hard copy mail to approximately 75,000 class members, and by electronic mail to approximately 13,000 additional class members. Keough Aff. ¶ 4. The web site maintained by the class administrator was visited almost 14,000 times, and more than 4,000 telephone calls were made to the administrator's offices. *Id.* ¶¶ 6-7. More than 7,000 claims for reimbursement have been submitted by class members. *Id.* ¶ 5. Ten class members have exercised their right to opt out of the settlement, although six of the ten appear to have done so because they are satisfied with assistance they have already received from defendants and not because they seek to bring individual lawsuits. *Id.* ¶¶ 8-9. Sixteen objections have been filed, most of which seek more extensive warranties, broader reimbursement rights, or new television sets.

## DISCUSSION

A. <u>Final Approval of the Settlement</u>

The process leading to the settlement was fair. I held several conferences with counsel, in person and by telephone, during the course of the negotiations. *See* Minute Entries for proceedings held on Sept. 20, 2007, Feb. 6, 2008, May 30, 2008 and June 12, 2008. I am satisfied that the settlement was the result of arms-length negotiations conducted by highly experienced and capable counsel.

In reviewing the substantive fairness of the settlement, I consider the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See also Sony*, 2008 WL 1956267, at *6. First, this litigation is fairly complex and proceeding to trial would be expensive. Plaintiffs' claims depend upon highly technical expert testimony establishing that defendants' bulbs were somehow defective. Although it seems plaintiffs could muster strong anecdotal evidence of premature bulb failure, a successful litigation strategy would undoubtedly include

expert testimony explaining the cause of the early bulb failures. Defendants would no doubt present competing expert reports, and *Daubert* hearings would likely ensue. Finally, by the time the litigation concluded, the covered television sets would be nearing the end of their useful lives. The settlement permits class members to continue receiving the benefit of their expensive purchase secure in the knowledge that any replacement bulbs they require will carry an extended warranty.

The reaction of the class similarly supports final approval. As indicated above, more than 7,000 claims have been submitted in response to the class notice, while only sixteen objections and ten opt-outs have been filed.

Of the very few objections made, some do not identify any particular basis for the objection.[1] Others seek either longer warranties or new televisions. Doubling the warranty period, however, seems to be a reasonable compromise, and it is unrealistic to think that a $2,000 television should be replaced, years after it was purchased, because of the failure, or even repeated failures, of a $200 part. At least one objection raises concerns about other television set components. However, the settlement agreement requires plaintiffs to release only those claims "relating to the performance or useful life of the lamp assembly component, including its component lamp and bulb." Settlement Agreement Definition I; ¶ 13. Another objection complains that the settlement does nothing to address the problems consumers have experienced with bulbs; as discussed below, though, defendants represent that the new replacement bulbs

---

[1]Moreover, of the sixteen "objections," one individual did not object to the settlement but rather sought additional information; one individual filed two separate "objections;" and one of the "objectors" objected and opted out, satisfied with Toshiba's response to their bulb problem. *See* Docket Entries 31, 37, 39, and 40.

have an improved life span.  In sum, and in light of the expense of litigation, the problems of proof and the variations in television usage among class members, and the statement in the owner's manuals that even well-made bulbs have a limited life span, these objections do not raise serious questions about the fairness of the settlement.

The settlement was reached after formal and informal discovery.  According to the parties, defendants provided plaintiffs with documents and information relevant to the merits of the case.  Mem. of Law in Supp. of Joint Mot. for Final Approval at 16; Sellinger Decl. ¶ 4. Moreover, although the case settled at an early stage, there was ample time for counsel to learn about the strengths and weaknesses of their respective positions; the initial conference was held in September of 2007, and the settlement was not reached until the following June.

Had this case proceeded to trial, plaintiffs would have faced significant obstacles in their efforts to establish liability.  First, the written manuals provided to purchasers of the televisions involved in this case stated that the television bulbs had a limited useful life and that statements in the owner's manuals about the number of hours bulbs might be expected to last were merely estimates and not guarantees.  Second, the most egregious bulb failures had already been the subject of a voluntary remediation program at the time this case was settled.  Finally, to prevail on their claims of premature bulb failure, plaintiffs would need to persuade a finder of fact that they had accurately estimated the number of hours they used their television set before their bulb failed.  Thus, the risk that plaintiffs would be unable to establish liability at trial was not insignificant.

The next two *Grinnell* factors do not weigh in favor of approval.  First, defendants could no doubt withstand a more substantial judgment.  Second, the parties contend that it is unclear

whether this suit could be maintained as a class action through trial. While legitimate questions about class certification might have been raised, I conclude, for reasons discussed further below, that plaintiffs most likely could have successfully addressed them. I do agree, however, that serious manageability issues would arise if a jury had to be instructed pursuant to the consumer protection laws of the fifty states and the District of Columbia. In any event, all nine *Grinnell* factors need not be satisfied; "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003), *citing D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

Finally, with respect to *Grinnell*'s last two factors, the settlement is reasonable. All class members who need to purchase replacement bulbs in the future will benefit from a warranty twice as long as the one in place before the settlement was reached. Moreover, counsel for defendants has represented that the bulb design has been improved, and that warranty claim data indicates that new replacement bulbs are lasting longer than their predecessors did. Finally, class members who were forced to replace bulbs in the past, provided they did so within the time frames set forth in the settlement agreement, will be entitled to full reimbursement.[2]

In considering the reasonableness of the settlement, I have also taken into account that the potential recovery sacrificed by compromise is not substantial. A successful outcome might include a more extended warranty on replacement bulbs or reimbursements for all replacement bulbs and not only those purchased because of bulb failures within limited time frames. Still,

---

[2]The agreement provides for reimbursement to purchasers who experienced a single bulb failure within 18 months of purchasing their television, two or more bulb failures within 24 months of purchasing their television, or a replacement bulb failure within 12 months of purchasing a replacement bulb. Settlement Agreement ¶ 6.

this is not a case with the potential to recover damages for pain and suffering, emotional distress or other damages that might substantially exceed the reimbursements already provided for in the settlement agreement.

For all these reasons, and having considered each of the *Grinnell* factors, I conclude that the settlement terms are fair, reasonable and adequate, *see* Fed. R. Civ. P. 23(e), and that the parties' motion for final approval should be granted.

B.      Certification of the Settlement Class

*1) Rule 23(a)*

The prerequisites for class certification set forth in Rule 23(a) are easily met in this case. As indicated above, there are approximately 265,000 class members, and almost 90,000 of the them have been identified and sent hard copy or electronic mail notice. Clearly, the class is so numerous that joinder of all members is impracticable.

Commonality is satisfied as well. Each class member purchased a similar television set with an original bulb that had a high early failure rate. Thousands of members suffered early bulb failures and incurred expenses purchasing replacement bulbs, many of which also failed early in their useful lives. All class members share in the potential benefit provided by an extended warranty for replacement bulbs. Thus, the circumstances of this case are similar to those that led to a finding of commonality in *Sony*. *See* 2008 WL 1956267, at *12.

The claims of the representative parties are typical of those of the class members. Each of the named plaintiffs purchased a covered model television, and each experienced a bulb failure long before the life span estimated in the owner's manual had run. Four of the named plaintiffs purchased replacement bulbs which also failed early on in the course of their expected life. The

claims of the named plaintiffs and of the members of the class thus arise from the same conduct of the defendants: the sale of television sets containing bulbs, and replacement bulbs, that did not last as long as purchasers reasonably expected they would.

Finally, the representative parties will adequately represent the interests of the class. The attorneys representing the class are experienced in class action and consumer litigation. Having observed lead plaintiffs' counsel during court proceedings and reviewed his written submissions, I am satisfied that plaintiffs have received excellent representation. I discern no actual or potential conflict of interest between the named class representatives and the absent class members.

*2) Rule 23(b)(3)*

I now turn my attention to the requirements to Rule 23(b)(3). Like *Sony*, this is a consumer fraud case and thus the type of action in which "[p]redominance is a test readily met." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As in *Sony*, any sub-category within the class, such as one consisting of plaintiffs who acquired extended warranties at the time of purchase, do not have interests so different from their fellow class members as to overwhelm the questions of law and fact common to the class.

The only serious question raised with respect to predominance arises from plaintiffs' designation of a nationwide class. As noted in a recent Southern District decision, courts are divided over whether "differences in the underlying state laws applicable to individual putative class members' consumer-protection claims preclude a finding of predominance." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 158 (S.D.N.Y. 2008) ("*Video Game*"). When considering certification for purposes of settlement, though, courts are more inclined to

find the predominance test met, even when there are differences in applicable state laws. *Id.* at 159.

Plaintiffs in this case have not addressed the question of whether their claims are governed by the laws of the states where the televisions were purchased, or whether the laws of a single state – New Jersey, for example, where one of the defendants has its principal place of business – apply. Am. Compl. ¶ 17. Nor have counsel provided the court with an analysis of the relevant provisions of the consumer protection laws of the various states. *Video Game* and some of the cases it cites suggest that, before finally approving a class action settlement, it is appropriate to conduct a choice-of-law analysis and to examine the various state laws that apply. Here, however, for the reasons stated below, I am satisfied that the parties' failure to brief those issues for the court is not fatal to their joint motion for final approval.

First, as discussed above, the facts of this case closely resemble those in *Sony*, where the court approved a final settlement without a detailed, state-by-state analysis of applicable laws. 2008 WL 1956267, at *14. Another court in this District has also certified a nationwide class despite differences in applicable state laws. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76-80 (E.D.N.Y. 2004). Second, *Video Game* focused on the differences in state consumer protection statutes with respect to the element of reliance, but the questions of reliance that concerned the court in *Video Game* are not applicable here.[3] As described in detail in the *Video Game* decision, the alleged misrepresentation in that case impacted class members in a

---

[3] Other cases refusing to certify a nationwide class because of variations in applicable state consumer protection law include *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008); *Rebman v. Follett Higher Educ. Group, Inc.*, 248 F.R.D. 624, 632 (M.D. Fla. 2008); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002).

variety of very different ways. *See also McLaughlin v Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) (decertifying a class of plaintiff smokers who alleged that defendant cigarette manufacturers deceptively claimed that "light" cigarettes were healthier than "full-flavored" cigarettes because it found that "[i]ndividualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative").

Here, although some class members may have become more familiar with defendants' representations about bulb life before purchasing their television sets than others, it is reasonable to assume that all purchasers of high-end, expensive television sets expect the sets to last for several years and not to require expensive replacement parts on an annual or semi-annual basis. Moreover, every purchaser of defendants' televisions made use of the set's lamp assembly and bulb; unlike, for example, the aspects of the product in dispute in *Video Game* or the "light" character of the cigarettes in *McLaughlin*, the bulb was essential to the useful operation of the television by *any* consumer, and not an extra feature or attribute used or desired only by some purchasers. For these reasons, it seems likely that plaintiffs from any state would be able to state a claim against defendants, and that variations in state laws would not have a substantial impact in this case.

Finally, the law favors settlements. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting a "strong judicial policy in favor of settlements, particularly in the class action context"). If this case could only have proceeded by means of separate lawsuits brought on a state-by-state basis, plaintiffs might not have mustered the resources to press their claims, and defendants might not have been willing to settle those claims on comparably

favorable terms.

In *McLaughlin*, the Second Circuit declined "to adopt the Fifth Circuit's blanket rule that 'a fraud class action cannot be certified when individual reliance will be an issue,'" 522 F.3d at 224, and its refusal to certify a class was based on its conclusion that, on the particular facts presented, "reliance is too individualized to admit of common proof." *Id.* at 225. That difficulty is not present here. Accordingly, and for all the reasons stated above, the predominance test is met here.

As to superiority, a class action, with all claims concentrated in one forum, is superior to other methods of fairly and efficiently resolving this dispute. As in *Sony*, "[w]hile the class-wide damages are considerable in the aggregate, the individual damages may be too small to make litigation worthwhile." *See* 2008 WL 1956267, at *14. The cost to replace a bulb like the ones at issue in this lawsuit is approximately $225. The expert discovery and testimony necessary to press a claim that the bulbs provided by defendants were defective would be very expensive. Even a consumer who was required to replace several bulbs would not find it worthwhile to bring a claim for reimbursement.

With the exception of a single person who has commenced an individual action in Massachusetts state court and an objector who has indicated an intention to bring his own suit as well, *see* Keough Aff. ¶ 9, there are no other lawsuits concerning this controversy pending before other courts.[4]

Finally, while case management difficulties might arise if this case had proceeded to trial

---

[4]As a result of the settlement reached here, a plaintiff in a related action in California, *Surdam v. Toshiba Am. Consumer Prods., L.L.C.*, Case NO. 08 CV 0197 H POR (S.D. Cal.), agreed to dismiss her action.

and jury verdicts under the laws of fifty states and the District of Columbia were required, the case does not pose serious management difficulties in its current settlement posture. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").

For all these reasons, I conclude that the requirements of Rule 23(a) and (b)(3) are satisfied.

C.     Attorney's Fees

Finally, class counsel seeks approval of an award of attorney's fees and expenses totaling $247,224.40, which defendants have agreed to pay pursuant to the Settlement Agreement. In fact, defendants have already paid class counsel $215,000 in attorney's fees and $2,224.40 in expenses, subject to the court's approval. Pursuant to the Settlement Agreement, plaintiffs seek an additional $30,000 in fees and costs incurred in executing the notice of settlement and finalizing the settlement, which defendants have agreed to pay.

Despite defendants' consent to the award of fees and costs, the court must assess the reasonableness of the award when considering whether the settlement is fair. Courts in the Second Circuit determine reasonableness either by calculating the fee award as a percentage of the settlement or by calculating a "presumptively reasonable fee," which is the product of the hours reasonably expended multiplied by a reasonable hourly rate, *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 121 (2d Cir. 2007).[5]

---

[5]The Court abandoned the term "lodestar" in determining a reasonable attorney's fee award. *Arbor Hill*, 493 F.3d at 117-18.

*Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Whichever method is used, the requested award is reasonable.

Here, the total award of fees and costs, $247,224.40, is a small percentage of the settlement monies to be distributed to the class. At the time of the fairness hearing, there were approximately 7,287 individuals who had filed claim forms, seeking reimbursement of $250, on average. Accordingly, the settlement could be valued at $1,821,750. Class counsel's application for fees and costs is thus approximately only 14% of the settlement's current value, assuming all submitted claims are valid. At the fairness hearing, defendants' counsel stated that not all of the claims are valid, but defendants nonetheless estimate that they will pay over $1 million in claims. Based on this estimate, the award of fees is approximately 25% of the settlement, which is still within the range of reasonableness. *See Goldberger*, 209 F.3d at 51-52. Moreover, the attorney's fees are separate and apart from the settlement payments to class members; i.e., the award of fees and costs will not reduce the recovery of the class.

Using the presumptively reasonable fee as a cross-check, plaintiffs' application for fees and costs is also reasonable. Class counsel collectively have spent approximately 621.6 hours on this litigation. Counsel seeks reimbursement of rates, ranging from "$405 to $600 for partners, $135 to $475 for associates, and $100 to $240 for paralegals and staff." The rates sought by counsel are higher than the usual rates awarded in this district to attorneys practicing in comparable fields of law. However, lead counsel, Gary E. Mason of The Mason Law Firm, LLP, has "served as lead counsel or co-counsel in numerous class actions" in his twelve years representing plaintiffs in consumer class actions and mass torts, and thus has substantial experience in this highly specialized area of law. *See* Mason Aff. Ex. 2. Even using counsel's

above-average rates, the "presumptively reasonable fee" is nevertheless fair. Multiplying the hours expended by counsel's rates, plaintiffs' calculate the presumptively reasonable fee as $262,558. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other 'less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Goldberger*, 209 F.3d at 46. Here, although there was no guarantee *any* fee would be awarded when plaintiffs' counsel took on this action, counsel seek no multiplier above and beyond the presumptively reasonable fee amount.

For all these reasons, class counsel's application for a negotiated award of fees and costs in the total amount of $247,224.40 is reasonable and approved.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Dated: Brooklyn, New York
February 24, 2009

U:\ersler m and o.wpd